IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



THOMAS K. HOGGE,

    Plaintiff,

v.                                            Civil Action No. 3:09CV582

HARVARD STEPHENS, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983. Plaintiff alleges that the ten named Defendants[1] failed to timely diagnose his hepatitis C, failed to properly treat his condition with drugs that combat the hepatitis C Virus ("HCV"), and failed to properly treat a benign tumor in his lung. Defendants Stephens, Schilling, and Davis have filed a Motion for Summary Judgment, to which Plaintiff has responded.[2] Also before the Court are Plaintiff's motions for injunctive relief, motion to amend, and motion to appoint counsel.

---

[1] Defendants are: Linda Robb, former phlebotomist at Powhatan Medical Unit; Mark Amonette, M.D., former Chief Institutional Physician at Powhatan Correctional Center; Alvin Harris, M.D., former Chief Institutional Physician for Deerfield Correctional Center ("DCC"); Charles Hoffman, M.D., Institutional Physician at DCC; S. Manickavasag, Institutional Physician at DCC; Keith Davis, Warden of DCC; Bonita Badgett, RN, Medical Administrator at DCC; Fred Schillings, Director of Prison Health Services; Harvard Stephens, M.D., Chief Medical Authority for the Virginia Department of Corrections ("VDOC"); and Mary Johnson, RN, a nurse at DCC.

[2] The other served Defendants have filed motions to dismiss. By Order entered on August 20, 2010, the Court ordered Plaintiff to provide a correct address for Defendant Robb, and to show cause for failing to timely serve her.

# I. SUMMARY JUDGMENT STANDARD

Summary judgment is to be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[3] *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless,"'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"

---

[3] Although he refers to his need for discovery, Plaintiff has failed to file any affidavit explaining why he cannot respond to the motion for summary judgment. *See* Fed. R. Civ. P.56(f). "[O]ur court expects full compliance with rule 56(f). . . ." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246 n.19 (4th Cir. 2002). Thus, "the 'failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Id.* (*quoting Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996).

2

*Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)).

The parties have submitted numerous documents and affidavits. Of course, the facts offered by affidavit must be in the form of admissible evidence. *See* Fed. R. Civ. 56(e). In this regard, the statement in the affidavit or sworn statement "must be made on personal knowledge . . . and show that affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).[4] Furthermore, summary judgment affidavits must "set out specific facts." Fed. R. Civ. P. 56(e)(2). Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay."[5] *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citation omitted) (*citing Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)). The absence of an "affirmative showing of personal knowledge of specific facts" prevents the consideration of such facts in conducting the summary judgment analysis.[6] *EEOC v. Clay Printing Co.*, 955 F.2d 936, 945 n.9 (4th Cir. 1992) (internal quotation marks omitted). In light of the foregoing principles, the following facts are established for purposes of this motion for summary judgment.

---

[4] For example, Plaintiff's opinions as to the manner in which the various hepatitis treatment protocols should be interpreted do not constitute admissible evidence. *See* Fed. R. Evid. 701, 702.

[5] For example, Plaintiff's proffer of statements allegedly made by Dr. Menasha (Compl. ¶ 29) does not constitute competent summary judgment evidence absent an affidavit from Dr. Menasha. Fed. R. Evid. 801, 802.

[6] Plaintiff's conclusory statements regarding the mental states of Defendants are therefore insufficient to establish a material issue of fact.

3

## II. BACKGROUND

Plaintiff's claims against Defendant Stephens arise from Stephens's role in approving or denying treatment requested by other doctors. Plaintiff's claims against Defendants Davis and Schillings (hereafter "the Supervisory Defendants") rest solely on their position as supervisors.

### A. Facts Relevant to Plaintiff's Hepatitis and Related Liver Conditions

Plaintiff has been incarcerated since 1997. On February 2, 2006, while Plaintiff was incarcerated at DCC, blood tests revealed abnormalities in Plaintiff's blood, including low white blood cell and platelet counts. Follow-up screening performed on February 14, 2006 revealed that Plaintiff was suffering from hepatitis.

#### 1. Diagnosis and Pharmacological Treatment of Plaintiff's Hepatitis and Related Conditions

On March 9, 2006, Defendant Harris of DCC requested a liver biopsy to determine the extent of any liver damage. An outside physician denied this request due to Plaintiff's low platelet count. For approximately eighteen months, Dr. Harris performed "routine" blood tests every six months. On September 25, 2007, Plaintiff's medical team performed a blood test (Fibrosure) as a substitute for a liver biopsy. On October 3, 2007, Dr. Kazlauskas, a DCC physician not named in this suit, submitted a request to Defendants Stephens and Schilling for treatment with anti-HCV drugs.

On January 8, 2008, Dr. Stephens denied authorization for the drug treatment, explaining that "[t]reatment is contraindicated due to low platelet count, 66,000." (Compl. Addendum N.) On January 23, 2008, Defendant Schilling denied Plaintiff's Level II grievance, explaining that "Due to your low platelet count . . . . treatment would predispose you to severe and potentially

4

fatal bleeding complications." (Compl. Addendum O.) Schilling offered a more fulsome explanation in his February 20, 2008 denial of Plaintiff's subsequent Level II grievance:

> A progress note in your chart dated 2/6/08 states that Dr. Stephens did not approve treatment for you because treatment is contraindicated for individuals with low platelet count. Your platelet count is 66,000 which is below the acceptable number for treatment. The medication used for treatment of Hepatitis C could increase the reduction in your platelet count and cause fatal bleeding. Also, although treatment is recommended for some individuals with Hepatitis C, studies have not shown that treatment prevents suffering or prolongs survival.

(Compl. Addendum P.)

Plaintiff then met with Defendant Manickavasag ("Dr. Manickavasag"), who recommended an abdominal CT scan to determine the condition of Plaintiff's liver, spleen, and other organs. On April 17, 2008, Dr. Manickavasag performed an abdominal CT scan. In addition to providing imagery of Plaintiff's digestive organs, the CT scan showed a small mass in Plaintiff's lung.[7] Based on the results, Dr. Manickavasag recommended a consultation with a hepatologist and gastro-intestinal ("GI") specialist. On August 13, 2008, Plaintiff saw a GI specialist at MCV, who recommended an upper endoscopy, liver ultrasound, and further blood tests in order to accurately diagnose Plaintiff's condition. Dr. Manickavasag requested an upper endoscopy (to check for varices) and a liver ultrasound (to check for cancer) on August 29, 2008. On October 27, 2008, Defendant Stephens denied the ultrasound, recommending alternative testing such as fibrosure. Dr. Manickavasag submitted a second request for ultrasound on December 19, 2008, which was approved on December 22, 2008. (Compl. ¶ 24 (*citing*

---

[7] Facts relevant to the treatment of this mass are discussed in the following subsection of this opinion.

Addendum II.) Some of the blood tests requested by the GI specialist were never performed. (Compl. ¶ 51.)

On February 18, 2009, an upper endoscopy was performed, and six bands were placed around Plaintiff's esophageal varices. On March 10, 2009, five more bands were placed on esophageal varices during a second upper endoscopy procedure.[8] On March 19, 2009, a liver ultrasound was performed. No follow up appointment was scheduled, however, and Plaintiff filed an informal complaint to arrange for one on May 10, 2009. (Compl. ¶ 47.)

On May 17, 2009, Plaintiff filed a grievance because staff had not performed the blood tests recommended by specialists. In response to Plaintiff's grievance on the issue, Defendant Stephens wrote:

> All orders recommended by the off-site doctor are just that, recommendations. The Physician in charge of your care must approve and order medications/tests at his discretion. It is not an order until the physician in charge of your care writes as such in your medical file. His decision is final in reference to your health care needs.

(Addendum CCC.) As of August 26, 2009, Plaintiff had not been taken for a follow-up consultation.

### 2. Nutritional Treatment of Plaintiff's Hepatitis and Related Conditions

On March 25, 2008, medical staff placed Plaintiff on a special diet. The special diet was discontinued on July 30, 2008.[9] On September 4, 2008, Defendant Hoffman wrote in Plaintiff's

---

[8] Plaintiff contends that the delay in treatment led to the development of these varices and the concomitant risk of death should one of the bands burst.

[9] Plaintiff asserts that the July 30, 2008 CT scan showed significant improvement to his liver. According to Plaintiff, "[t]he only difference in [his] lifestyle and living conditions between [the two scans] was being placed on a special diet [which] called for 'greens with meals'

chart that no medical indication for any special diet existed. On September 20, 2008, Dr. Ajumobii, another DCC physician, recommended a special diet. Defendants Stephens and Schilling have not allowed Plaintiff to be placed on a special diet because, according to Defendant Stephens, such a diet is not medically indicated.

## B. Facts Relevant to Plaintiff's Lung Condition

On July 17, 2008, Plaintiff visited a pulmonologist at MCV, who recommended a full chest CT scan and a follow-up appointment. On July 30, 2008, the CT scan was performed, but no follow-up appointment occurred until July 9, 2009. (Compl. ¶ 49.) At the follow up appointment, Plaintiff was informed that "the condition is stable and nothing else needs to be done regarding this matter." (Compl. ¶ 49.) Plaintiff claims that the delay caused him stress and worry.

### III. PLAINTIFF'S CLAIMS

Plaintiff raises the following claims:

Claim 1  Plaintiff's Eighth Amendment[10] rights were violated by the level of treatment given for his hepatitis C by:

    (A)  Defendant Stephens;
    (B)  Defendant Davis;
    (C)  Defendant Schilling;
    (D)  Defendant Amonette;
    (E)  Defendant Harris;
    (F)  Defendant Hoffman;

---

[which] allowed plaintiff to eat fresh vegetables, and sometimes fruit . . . in place of the processed foods being served." (Compl. ¶ 23.) Plaintiff, however, is not competent to offer any medical opinion regarding the existence or cause of his improved condition. *See Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001).

[10] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

|     |     |                        |
| --- | --- | ---------------------- |
|     | (G) | Defendant Manickavasag; |
|     | (H) | Defendant Badgett;      |
|     | (I) | Defendant Johnson; and, |
|     | (J) | Defendant Robb.         |

Claim 2    Plaintiff's Eighth Amendment Rights were violated by the level of treatment given for a tumor in his lung by

      (A)    Defendant Stephens;
      (B)    Defendant Davis;
      (C)    Defendant Schilling;
      (D)    Defendant Manickavasag;
      (E)    Defendant Badgett.

Plaintiff admits that an additional claim regarding treatment for a growth in his abdominal wall "has become moot as plaintiff was seen by a general surgeon concerning this and it was recommened [sic] that nothing be done at this time due to the cirrhosis and low platelet count." (Pl.'s Resp. Mot. Summ. J. ¶ 14A.) This claim is deemed to have been withdrawn.

## IV. ANALYSIS

An inmate's Eighth Amendment rights are violated when he is subjected to an unnecessary and wanton infliction of pain, *see Wilson v. Seiter*, 501 U.S. 294, 298 (1991), "contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (*citing Estelle*, 429 U.S. at 103-04). A two-part test is used to determine whether prison conditions present a constitutional violation. The plaintiff must show: "'(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.

8

1993) (*quoting Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). The first showing requires the court to determine whether the deprivation of a basic human need was "*objectively* 'sufficiently serious,'" while the second requires it to determine whether the officials *subjectively* acted with a "'sufficiently culpable state of mind.'" *Id.* (*quoting Wilson*, 501 U.S. at 297). In the motion for summary judgment, Defendants Stephens, Schilling, and Davis concede that hepatitis C is a serious medical need.

"Deliberate indifference is a very high standard-a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (*citing Estelle*, 429 U.S. at 105-06). This standard requires a plaintiff to introduce evidence from which the finder of fact could conclude that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (*quoting Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)). Evidence that a defendant recklessly refused or delayed a plaintiff access to medical professionals with sufficient expertise to treat a particular condition may support a finding of deliberate indifference. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1277-79 (10th Cir. 2001). Nevertheless, absent exceptional circumstances, disagreements between an inmate and a physician over what level of care is proper cannot support an Eighth Amendment claim. *See, e.g., Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) *(citing Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("The affidavits submitted . . . reflect that [plaintiff] was under constant medical supervision from the time of his arrival . . . . Questions of medical judgment are not subject to judicial review.") (citation omitted). A prison health care provider is not deliberately indifferent

if he or she responds reasonably, or even merely negligently, to known risks. *See Estelle*, 429 U.S. at 106; *Brown v. Harris*, 240 F.3d 383, 389-91 (4th Cir. 2001); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

A.   **Claim 1(A): Hepatitis and Liver Treatment by Defendant Stephens**

Plaintiff offers several factual bases for his claim that Defendant Stephens violated his rights by failing to adequately treat his liver condition. Plaintiff seeks damages against Defendant Stephens for countermanding Dr. Kazlauskas's recommendation that Plaintiff receive treatment for hepatitis C. (Compl. ¶¶ 14-16.) A mere disagreement between doctors does not establish that one doctor was deliberately indifferent. *See Wilson v. CMS Med. Servs.*, No. 4:06cv00967, 2007 WL 763092, at *6 (E.D. Mo. Mar. 9, 2007); *Thomas v. Bick*, No. 2:04cv00695, 2006 WL 903665, at *3 (E.D. Cal. Apr. 7, 2006). Indeed, contrary to his assertions, Plaintiff's own submissions show that Dr. Stephens's exercise of medical judgment comported with VDOC and federal Bureau of Prisons guidelines regarding commencement of HCV drug therapy. (*See* Compl. Addendum OO, at 2 (listing platelet count below 80,000 as an absolute exclusion criteria); Compl. Addendum PP, at 45 (requiring a platelet count greater than 75,000 for cirrhosis to be considered "compensated"); Compl. Addendum PP, at 63 (listing "Decompensated cirrhosis" as an absolute contraindicator for HCV drug therapy).) Plaintiff rests his conclusion that he should have received anti-HCV medication on a misreading of the guidelines, attempting to apply criteria for patients already being treated to those patients who have not begun treatment. (Compl. ¶ 31 (*citing* Compl. Addendum OO); Compl. ¶ 32 (*citing* Addendum PP).) Defendant Stephens's failure to approve HCV drug therapy does not indicate

deliberate indifference. *See Cooper v. Schilling*, No. 7:06CV00296, 2006 WL 3359592, *7 (W.D. Va. Nov. 20, 2006). Rather, it reflects due regard for Plaintiff's health and safety.

Plaintiff also faults Defendant Stephens for denying Plaintiff's special high-vegetable diet. (Compl. ¶ 23.) Defendant Stephens avers, "There is no clinical indication for a special diet as requested by offender Hogge." (Stephens Aff. ¶ 9.) Plaintiff has failed to rebut Defendant Stephens's showing that, in his own medical judgment, no such diet is necessary. Indeed, Plaintiff's own submissions belie his assertion that he requires a special diet. (Compl. Addendum FF, at 1 (explaining that the "optimal diet for a person with stable liver disease . . . resembles a generalized healthy diet for all people – even those without liver disease. And, in fact, that's exactly what it is!").) Moreover, the only indication of an excess of processed meat is a submission by Plaintiff indicating that the food service manager at DCC "is forced to order such items as Cajun patties, turkey burgers, and other processed meats in bulk." (Compl. Addendum EE, at 4.) Thus, Plaintiff fails to show that Defendant Stephens was deliberately indifferent with regard to Plaintiff's diet.

Plaintiff also seeks to hold Defendant Stephens liable for delaying Plaintiff's endoscopy and liver ultrasound. These procedures were initially requested on August 29, 2008, but only approved on December 22, 2008 after an initial denial. In his initial denial, Defendant Stephens recommended that Plaintiff instead be tested using a procedure known as fibrosure. Although Plaintiff points out that he had previously undergone fibrosure diagnosis, he offers no evidence to show the use of fibrosure was such an inadequate substitute that its repeated use would have constituted deliberate indifference. Plaintiff has failed to produce any other evidence to show that the approximately four-month delay rises to the level of a constitutional violation.

Plaintiff further alleges that he has received only some of the tests recommended by the off-site GI specialist on August 13, 2008. (Compl. ¶ 51 (*citing* Addendum CCC).) Plaintiff has failed to offer any evidence from which the Court could conclude that his treating physician's failure to order each and every test recommended by the outside physician rises above a mere disagreement to the level of deliberate indifference. *See Wilson*, 2007 WL 763092, at *6; *Thomas*, 2006 WL 903665, at *3.

Although Plaintiff may have preferred some different form of treatment, he has failed to produce evidence, as he must, from which a rational trier of fact could conclude that Dr. Stephens subjectively recognized that the course of treatment was inappropriate in light of his perception of Plaintiff's condition. *Parrish*, 372 F.3d at 303 (*quoting Rich*, 129 F.3d at 340 n.2). Plaintiff received substantial medical care, and his disagreement with the exact measures he received does not establish any constitutional violation. *See e.g., Estelle*, 429 U.S. at 107; *Wright*, 766 F.2d at 844-45. Claim 1(A) will be DISMISSED.

## B. Claim 2(A): Lung Treatment by Defendant Stephens

Plaintiff also seeks to hold Stephens liable for delaying Plaintiff's follow-up appointment subsequent to his July 30, 2008 chest CT scan. (Compl. ¶¶ 21-22.) On July 30, 2008, the CT scan was performed, but no follow-up appointment occurred until July 9, 2009. (Compl. ¶ 49.) At the follow up appointment, Plaintiff was informed that "the condition is stable and nothing else needs to be done regarding this matter." (Compl. ¶ 49.) Plaintiff does not allege that his lung condition caused him pain or even discomfort; rather, he claims only that awareness of his condition caused him stress and worry. The ultimately benign nature of the nodule in his lung belies any claim by Plaintiff that his condition was objectively "sufficiently serious" to require

medical treatment. *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases); *see also Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (noting that a condition is "serious" only if it "has been diagnosed by a physician as mandating treatment, or . . . even a lay person would recognize the necessity for a doctor's attention"). Claim 2(A) will be DISMISSED.

## C. Claims Against the Supervisory Defendants

The theory of *respondeat superior* is not available for § 1983 actions. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Rather, Plaintiff must allege facts that demonstrate that the supervisory defendants personally were deliberately indifferent to a serious medical need. This standard requires a plaintiff to introduce evidence from which the finder of fact could conclude that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish*, 372 F.3d at 303 (*quoting Rich*, 129 F.3d at 340 n.2). When an inmate is under a physician's care, a nonmedical prison official "can generally rely on his medical staff's examinations and diagnoses" in determining what level of treatment is warranted. *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (*citing Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990)). In order to defeat the presumption that such reliance was reasonable, the inmate must show that the supervisory official knew that the care provided was so obviously incompetent that it posed a substantial risk of harm to the inmate's health. *Miltier*, 896 F.2d at 855.

Although Defendant Schilling signs responses to Level II grievances regarding medical or dental treatment, his "job is primarily one of administration." (Schilling Aff. ¶ 4.) In his affidavit, Defendant Schilling avers:

> Before I issue any Level II response regarding treatment an inmate has received . . . the matter is investigated by the Chief Physician for the VDOC. . . . At Level II [a] grievance response investigated by the Chief Physician is also drafted by the Chief Physician. . . . The Level II response that I sign always follows the final decision that has been drafted by the appropriate person (Chief Physician, Chief Dentist, etc.). I do not substitute my own judgment for that of the health care professionals investigating and drafting the Level II responses.

(Schilling Aff. ¶ 6.) Defendant Schilling acknowledges receiving from Plaintiff a letter on June 1, 2008, but avers that he did not respond because the issue had been addressed by medical personnel. (Schilling Aff. ¶ 9.)

Defendant Davis similarly does not "make decisions respecting inmates' medical needs or appropriate course of treatment." (Davis Aff. ¶ 6.) Instead, these decisions "always rest with qualified medical personnel who are trained to make decisions regarding the care and treatment of inmate patients." (Davis Aff. ¶ 6.) According to Defendant Davis, these medical personnel responded to Plaintiff's medical needs. (*See* Davis Aff. ¶ 6 ("I have no reason to believe that Hogge's treatment needs have not been met at [DCC])".)

In response, Plaintiff contends that "both Davis and Schilling have been made well aware of [P]laintiff's complaints concerning the lack of adequate and appropriate medical care and treatment, the most serious of which is the hepatitis C." (Pl.'s Resp. Mot. for Summ. J. ¶ 13(A).) Plaintiff also points out that Davis and Schilling determined each of Plaintiff's grievances to be unfounded. (Pl.'s Resp. Mot. for Summ. J. ¶¶ 10(B), 10(C).) Plaintiff, however, fails to provide

any admissible evidence to rebut Defendants' evidence that they relied on the medical judgments of VDOC physicians in so doing, and neither "*actually knew of* and *disregarded* a substantial risk of serious injury" nor "*actually knew of* and *ignored* [a] serious need for medical care." *Parrish*, 372 F.3d at 302 (*quoting Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001)). The record shows that the Supervisory Defendants oversaw an constant course of treatment that they believed adequate, albeit not the one Plaintiff might have preferred. Thus, Plaintiff has failed to demonstrate that the Supervisory Defendants demonstrated deliberate indifference to Plaintiff's medical needs. Claims 1(B), 1(C), 2(B), and 2(C) will be DISMISSED.

## V. INJUNCTIVE RELIEF

Plaintiff requests injunctive relief in connection with his claims. Plaintiff has failed to produce any evidence that suggests that he will not receive whatever medical care is appropriate. Thus, Plaintiff has not shown, as he must, that irreparable injury will result unless an injunction issues. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938 (4th Cir. 1995) (*citing Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)).

Additionally, Plaintiff has filed two separate motions for preliminary injunctions. Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Counsel*, --- U.S. ----, 129 S. Ct. 365, 375-76 (2008). To warrant an injunction, Plaintiff must clearly establish four factors: "'[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Real Truth About Obama, Inc., v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (alterations in original) (*quoting Winter*,

129 S. Ct. at 374), *vacated on other grounds*, 130 S. Ct. 2371 (2010). Failure to make a clear showing of each of the four factors precludes relief. *Id.* (*quoting Winter*, 129 S. Ct. at 374).

Plaintiff has not made any clear showing that he is currently receiving constitutionally inadequate medical care or that he is likely to receive inadequate medical care in the future. Plaintiff therefore fails to demonstrate a likelihood of either success on the merits or of irreparable harm absent this Court's intervention. Plaintiff's Motions for Preliminary Injunctions (Docket Nos. 4, 41) will be DENIED.

## VI. MISCELLANEOUS MOTIONS

Plaintiff has filed a motion to amend. Generally, when a plaintiff seeks leave to amend his complaint, "a copy of the proposed amended pleading, and not simply the proposed amendment, must be attached to the motion." *Williams v. Wilkerson*, 90 F.R.D. 168, 10 (E.D. Va. 1981). Plaintiff has not attached a proposed amended pleading. In this case, however, allowing the amendment will not unduly complicate litigation of the instant case. Plaintiff's Motion to Amend (Docket No. 40) will be GRANTED.

Plaintiff has also filed a motion for the appointment of counsel. Counsel need not be appointed in § 1983 cases unless the case presents complex issues or exceptional circumstances. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984); *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). This action presents no complex issues or exceptional circumstances. Additionally, Plaintiff's pleadings demonstrate that he is competent to represent himself in the action. Plaintiff's motion to appoint counsel (Docket No. 3) will be DENIED.

## VII. CONCLUSION

Defendants' Motion for Summary Judgment (Docket No. 10) will be GRANTED.

Plaintiff's claims against Defendants Stephens, Schilling, and Davis will be DISMISSED.

Plaintiff's Motions for Preliminary Injunctions (Docket Nos. 4, 41) will be DENIED.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Richard L. Williams
United States District Judge

Date: SEP 2 4 2010
Richmond, Virginia